LAW OFFICE OF ETHAN H. NELSON
Ethan H. Nelson (State Bar No. 262448)
Email: EthanNelsonEsq@gmail.com
15615 Alton Pkwy, Suite 450
Irvine, California 92618
Telephone: (949) 229-0961
Fax: (949) 861-7122

Attorney for Plaintiffs SINGLE GRAIN, LLC
And ERIC SIU

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO**

SINGLE GRAIN, LLC, and ERIC SIU,

Plaintiffs,

v.

YE SHANN TAN and DOES 1 through 200, inclusive

Defendants.

Case No. '23CV1804 AJB SBC

**COMPLAINT FOR:**

1. **VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT [18 U.S.C. § 1030 ET SEQ.];**
2. **VIOLATION OF THE CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT [CAL. PENAL CODE § 502];**
3. **VIOLATION OF THE DEFEND TRADE SECRETS ACT [18 U.S.C. §§ 1836-39 ET SEQ.];**
4. **VIOLATION OF THE CALIFORNIA TRADE SECRETS ACT [CAL. CIV. CODE § 3426.1 ET SEQ.]; AND,**
5. **DEFAMATION PER SE.**

JURY TRIAL DEMANDED

Plaintiffs Single Grain, LLC ("Single Grain" or "Company") and Eric Siu (collectively, "Plaintiffs") submit the following Complaint against Defendant Ye Shann Tan ("Tan" or "Defendant"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. This matter concerns a series of unlawful acts committed willfully and maliciously by Defendant Ye Shann Tan against her former employer, Plaintiff

Single Grain. After the termination of her employment with Single Grain, Defendant Tan quickly abandoned her responsibilities to her former employer and accessed Single Grain's password-protected computer network without authorization and in a clandestine manner for the purpose of causing damage to that network and deleting certain files and information, including Single Grain's confidential and proprietary business and customer information. Around that time, Defendant Tan also misrepresented her identity and published two reviews on the website Glassdoor, which contained factually false and defamatory allegations about Single Grain's working environment and business practices. Defendant knew these statements were false at the time of their publication, and she published them for the purpose of damaging the Company's reputation and the reputation of its Chief Executive Officer.

## PARTIES

2. Plaintiff Single Grain is a California limited liability company with its principal place of business at 1001 Wilshire Boulevard #2048, Los Angeles, California 90017.

3. Plaintiff Eric Siu is an individual residing in Los Angeles, California.

4. On information and belief, Defendant Tan is an individual residing in San Diego, California.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*., and the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836-39 *et seq.*

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the facts supporting these claims are so related to the facts supporting the claims under the CFAA and DTSA that the claims form part of the same case or controversy.

7. This Court has personal jurisdiction over the Defendant because she is a resident of the state of California.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because the Defendant resides in this district and a substantial part of the events or omissions giving rise to this action occurred within this district.

## FACTUAL ALLEGATIONS

### Single Grain's Business, Trade Secrets, and Confidential and Proprietary Information

9. Single Grain is a digital marketing agency that works with clients of various sizes, and in various industries, to drive leads, increase sales and engagement, obtain new customers, and derive greater revenue and opportunities from existing customers. Single Grain crafts individualized marketing strategies for each of its clients and utilizes a vast array of state-of-the-art technologies to optimize its clients' digital footprint and customer outreach.

10. To accomplish its mission as a top-tier digital marketing agency, Single Grain develops and utilizes a variety of marketing assets, such as professionally produced videos, company logos, photographs, and raw video footage to be used as advertising copy. These marketing assets are stored, among other locations, in Single Grain's secure, password-protected Google Drive. These assets constitute proprietary and business information belonging not only to Single Grain but also, in some cases, to its various clients.

11. Single Grain has also gone to great lengths to develop marketing materials for the purpose of providing these materials to its clients, including blog posts, two podcasts created by Single Grain CEO Eric Siu, and educational videos displayed on Single Grain's website, which are hosted by the video platform Wistia (the "Wistia Videos").

12. Prior to the unlawful acts discussed herein, Single Grain largely grew its customer base and engagement via an account with the company "Drip," which

offered customer outreach and promotional advertising services to Single Grain's approximately 15,000 subscribers.

13. Prior to the unlawful acts discussed herein, Single Grain also maintained an account on the social media platform Instagram, which the Company used to promote its services, increase customer engagement, and obtain new customers.

14. As part of its business, Single Grain has invested and continues to invest substantial time and resources developing its commercially valuable confidential and proprietary information and trade secrets. These trade secrets include, but are not limited to, the following:

A. Detailed and individualized marketing strategies, methods, and plans;

B. Compilations of customer files that contain detailed customer information, including but not limited to customer identities, locations, contact information, and details regarding Single Grain's engagement and business dealings with those customers;

**C.** Internal and customer-owned marketing assets; and

D. Product and service pricing information, methods, and techniques, including sales proposal documents.

15. Single Grain takes reasonable steps to maintain the confidentiality of its trade secret and other confidential and proprietary customer and business information, including but not limited to implementing robust password protections, restricting access to the Company's computer networks, and subjecting its employees to mandatory confidentiality provisions in its employee handbook.

16. Single Grain's trade secret and other confidential and proprietary information cannot be purchased, derived, or ascertained from publicly available sources. Moreover, Single Grain's trade secret and other and other confidential and proprietary information is not generally known in Single Grain's industry. The

proprietary information is only available through select Single Grain employees who, by virtue of their position, have access to and a need to utilize this information to provide services to Single Grain customers.

17. Single Grain's trade secrets and other confidential and proprietary information have considerable economic value that Single Grain derives from their secrecy, in that competitors and other third parties could readily use that information to their commercial advantage. For example, competitors could use these trade secrets and this information: (1) to provide competitive digital marketing services to Single Grain customers; (2) to interfere with or seek to obtain Single Grain's customer relationships; (3) to undercut Single Grain by structuring or proposing competitive services along the lines used by Single Grain or to underbid Single Grain for competing products and services; or (4) to plagiarize or otherwise misappropriate Single Grain's unique marketing strategies, customer procurement or engagement methods, or other business plans or techniques.

**Defendant Tan's Employment with Single Grain**

18. Defendant Ye Shann Tan was employed by Single Grain to perform various marketing-related responsibilities from her date of hire on May 17, 2021, until her employment with Single Grain was terminated on January 27, 2023.

19. Specifically, Defendant was initially hired to the position of Head of Marketing (Education). Over the course of her employment with Single Grain, Defendant's responsibilities changed such that she was designated a General Manager and, finally, Senior Director of Brand Marketing.

20. While employed by Single Grain, Defendant was privy to a substantial amount of Single Grain's trade secrets and proprietary and confidential information, including but not limited to access credentials for Single Grain's Instagram account and Google Drive, as well as access to compilations of customer information, marketing strategies and plans, the Wistia Videos, business proposals, and marketing assets such as recruiting materials, logo files, audio and video files for Single Grain's

various podcasts, and various educational videos.

21. For example, during her employment, due to the nature of her unique role, Defendant was provided access to various software programs and files using the credentials associated with the Single Grain general operations account and the user account of Single Grain's CEO, Eric Siu, both of which were stored on the Company's account with the company 1Passsword—a service that functions as a vault for access credentials for various company accounts. In essence, 1Password permits sensitive access credentials for various accounts to be stored in a secure, central location, and Single Grain used it for that purpose.

22. As a condition of her employment, Defendant acknowledged her obligation to maintain the confidentiality of Single Grain's sensitive information both during and after her employment with Single Grain. Specifically, Defendant digitally signed a copy of Single Grain's employee handbook on October 13, 2022. The employee handbook contained a confidentiality provision, which defined Confidential Information as including but not limited to "information about Single Grain's management, clients, accounts, methods of doing business, operations, marketing and sales strategies, vendors, clients, and other information not generally known by the public about Single Grain." The policy made clear that "[e]ach employee of Single Grain is expected to maintain the absolute confidentiality of all such information" and that "[e]mployees may not use or disclose confidential information except as required in the performance of their duties."

**After Her Employment is Terminated, Defendant Tan Unlawfully Accesses and Destroys Single Grain's Trade Secrets and Confidential Information**

23. Single Grain terminated Defendant's employment effective January 27, 2023. Defendant was given weeks of advance notice of her termination, and ample time to prepare for the transition.

24. As of the date of Defendant's termination, Single Grain required

Defendant to return all Company property, including her work laptop.

25. Upon Defendant's termination, Single Grain also revoked Defendant's access to 1Password, the computer program used by Single Grain to secure and store access credentials for its various computers, networks, user accounts, programs, cloud storage, and other password protected data.

26. Thus, at the time of her termination, Defendant lacked authorization to access Single Grain's computers or networks, including any user accounts, cloud storage devices, or any systems for which she previously had access by virtue of her prior position with the Company. Indeed, without access to the Company's 1Password account, Defendant would lack knowledge of the various passwords and access credentials stored on the account, as was the Company's intention.

27. Upon information and belief, however, Defendant, prior to, but anticipating her termination of employment, surreptitiously and without authorization, copied, stored, or otherwise retained access credentials for certain Company accounts that were stored on 1Password before her access to 1Password was revoked. Upon information and belief, Defendant retained and stored these access credentials so that she could access certain Company computers, accounts, and networks after the separation of her employment, without the Company's knowledge or authorization.

28. Indeed, on January 28, 2023—merely one day after Defendant's termination, and after her access credentials had been revoked—an "unidentified user" accessed Single Grain's account with the company Drip.com ("Drip") using the access credentials for Single Grain's general operations account. Significantly, Defendant Tan is one of the few Single Grain employees who, during her employment, was provided with these access credentials.

29. For context, Drip is an ecommerce support company that generally gathers and organizes customer data, which enables ecommerce retailers and other businesses, like Single Grain, to market individualized client experiences and service

offerings via email.

30. In particular, Single Grain maintained an account on Drip to which current and potential customers would subscribe, giving them access to Single Grain content such as blogs, digital marketing advice, and links to Siu's YouTube videos. Single Grain expended substantial efforts in creating and maintaining the content hosted on its Drip account, which the Company used both to grow its client base and provide marketing services to its existing clients. Indeed, this was one of the primary methods the Company used to reach new clients and increase engagement with existing clients.

31. As of the date in question—January 28, 2023—Single Grain maintained over 15,000 subscribers to its Drip account—consisting of both existing and potential clients.

32. After accessing Single Grain's Drip account as described above, the "unidentified user" ran a bulk operation that unsubscribed each and every one of these subscribers and deleted all existing workflows for these subscribers.

33. Upon information and belief, the user also deleted certain proprietary forms that Single Grain had created and maintained on Drip.

34. After learning of these actions, Single Grain investigated the unauthorized access of its computer network via the operations account on January 28, 2023. The investigation revealed that the IP address of the "unidentified user" (i.e., the unique string of characters identifying the computer from which the login occurred) was obscured by a virtual private network ("VPN"), which is often used to deliberately disguise a computer IP address. The VPN IP address that was identified was 51.15.73.89.

35. Moreover, pursuant to the investigation, Single Grain corresponded with Drip's Data Protection Officer, who later confirmed that, after the user initiated this bulk operation, the user immediately attempted to delete all evidence that it had been conducted.

36. The identity of the user became clear several weeks later, when two additional unauthorized logins occurred on February 22, 2023. This time, the unauthorized user accessed the user account for Single Grain's CEO, Eric Siu. Defendant Tan is one of the few Single Grain employees who, during her employment, was provided with access credentials for this account.

37. Mere minutes after accessing Siu's account, the unauthorized user accessed and deleted the following Single Grain property, accounts, trade secrets and information:

a. Wistia videos from Single Grain's website, including the "About Us" and "Culture Page" videos, which constitute valuable advertising copy and took the Single Grain team approximately 10 hours to script, film, and edit.

b. Several internal and external marketing assets, such as promotional videos, company logos, photographs, and other raw footage.

c. Single Grain's Instagram account.

d. Various client video files, logos, proprietary marketing materials, photos, and raw footage from Single Grain's internal and password-protected Google Drive.

38. In the days that followed, Single Grain investigated this unauthorized access and deletion, which Single Grain suspected was performed by the same "unauthorized user" that had unlawfully accessed and deleted company information and property on January 28th via the Single Grain operations account.

39. Single Grain discovered that, while the user had also attempted to utilize a VPN to access Eric Siu's account on February 22nd, the user failed to activate the VPN until <u>just after</u> she logged in to Mr. Siu's account, permitting Single Grain to see the actual IP address from which the unlawful access originated.

40. Significantly, Single Grain identified the IP address from which the unlawful access originated as <u>70.95.178.250</u>. The Company was able to determine that this IP address originated in San Diego, CA. Notably, at the time this incident

occurred, only one current or former Single Grain employee resided in San Diego: Defendant Tan.

41. What's more, upon further investigation, Single Grain discovered that the IP address of 70.95.178.250 was the exact same IP address reflected on the Defendant's Tan's acknowledgment of Single Grain's employee handbook, which she signed electronically.

42. Additionally, after Defendant Tan was able to activate the VPN for the February 22nd access and deletion, it revealed the exact same IP address as the VPN that was utilized for the access and deletion that occurred on January 28th: 51.15.73.89.

43. In short, Single Grain obtained conclusive data demonstrating that the computer that Defendant used to electronically execute Single Grain's employee handbook was the exact same computer that was used to unlawfully access and destroy proprietary and confidential Single Grain property and information on February 22, 2023. What's more, after Defendant was able to activate a VPN for a portion of the unlawful access that occurred on February 22nd, the IP address for that VPN was the exact same as the IP address that was responsible for the prior (and remarkably similar) unlawful access and deletion that occurred on January 28, 2023—just one day after Defendant Tan's termination.

44. On information and belief, on January 28, 2023, Defendant Tan accessed Single Grain's operations account. She did so without authorization via access credentials that had been issued to her by virtue of her prior position at Single Grain, which were revoked upon her separation of employment, but which she unlawfully retained in anticipation of her termination. She used such access to delete, destroy, and/or use Single Grain's proprietary, confidential, commercially sensitive, and trade secret information, and it was her intent to use such access for this purpose. Moreover, she accessed this account and deleted or destroyed this information with the intent to harm Single Grain and its business.

45. On information and belief, on February 22, 2023, Defendant Tan accessed the user account of Single Grain's CEO, Eric Siu. She did so without authorization via access credentials that had been issued to her by virtue of her prior position at Single Grain, which were revoked upon her separation of employment, but which she unlawfully retained in anticipation of her termination. She used such access to delete, destroy, and/or use Single Grain's proprietary, confidential, commercially sensitive, and trade secret information, and it was her intent to use such access for this purpose. Moreover, she accessed this account and deleted or destroyed this information with the intent to harm Single Grain and its business.

**Single Grain Discovers Defamatory Statements Published by Tan**

46. On information and belief, shortly before the termination of her employment, on January 16, 2023, Defendant published a public review of Single Grain on the website Glassdoor.com. In pertinent part, the January 16, 2023 review falsely states that the "CEO is tanking the company" and "will likely have to file bankruptcy," with "waves of employees being fired at the start of every quarter since 2021."

47. The statements published by Defendant on January 16, 2023 were false. Moreover, Defendant knew they were false when she made them.

48. On information and belief, days after her termination, on February 6, 2023, Defendant Tan published a second review about Single Grain on Glassdoor. This time, Defendant stated that the Company engaged in "unethical behavior," specifically, that the CEO, Eric Siu, will "lie to every employee" and that he "engaged in unethical practices involving crypto and NFTs." The review also stated that "the company is now heading toward bankruptcy," and that the company had a long history of "laying off staff without warning or explanation."

49. The statements published by Defendant on February 6, 2023 were false. Moreover, Defendant knew they were false when she made them.

50. Given the tone and content of these statements, and the temporal

proximity between their publication and Defendant Tan's unlawful access of the Company's IT systems and deletion of the Company's trade secrets and proprietary information, Single Grain suspected that Defendant Tan was the person who published these reviews.

51. Consequently, on March 20, 2023, the Company, via counsel, sent a cease-and-desist letter to Tan informing her of their belief that she engaged in such unlawful access and deletion, and that she was responsible for the aforementioned Glassdoor statements. *See March 20, 2023 Cease-and-Desist Letter*, Exhibit A.

52. Two days later, on March 22, 2023, Tan responded to the cease-and-desist via a letter from her counsel. *See March 22, 2023 Response to Cease-and-Desist Letter*, Exhibit B. Significantly, this response acknowledged that Tan was the individual who posted the Glassdoor reviews, stating, in relevant part, that "Ms. Tan can write about her negative experience with her company due to Glassdoor's Freedom of Speech regulations." The letter also claimed: "Tan can post her feelings about her previous employment with your client as a matter of law."

**COUNT I**

**(Violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.)**

53. Single Grain realleges and incorporates the preceding paragraphs by reference.

54. Single Grain's computers and computer network are protected within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*., because they are used in interstate or foreign commerce or communication.

55. On information and belief, Defendant intentionally accessed Single Grain's computers or computer network without authorization or exceeding authorization and obtained information from a "protected computer" as that term is defined in 18 U.S.C. § 1030(e)(2)(B).

56. On information and belief, on two occasions shortly after the

termination of her employment with Single Grain, Defendant used a personal computer, the IP address of which was hidden, or was attempted to be hidden, by a VPN, to access Single Grain's computer network and thereby obtain documents, subscriber data, video files, customer information, marketing assets, and social media accounts that either constituted or contained confidential and proprietary information belonging to Single Grain.

57. On information and belief, Defendant accessed Single Grain's computer network without authorization, or in excess of her authorization, on January 28, 2023, and ran an unauthorized bulk operation whereby she removed contact information for approximately 15,000 subscribers to Single Grain's account with Drip.com. Defendant then deleted evidence of the bulk operation in an attempt to hide the operation's occurrence.

58. On information and belief, Defendant again accessed Single Grain's computer network without authorization, or in excess of her authorization, on February 22, 2023, and deleted at least two proprietary videos owned by Single Grain and hosted on the web marketing platform Wistia.

59. On information and belief, Defendant also deleted internal marketing assets (such as promotional videos, company logos, photographs, and other raw footage) and videos developed for customers from Single Grain's internal, password-protected Google Drive server, as well as Single Grain's Instagram account.

60. All told, on information and belief, Defendant accessed and deleted at least fifty (50) files, all of which reside on Single Grain's computer network and many of which contain Single Grain's proprietary, confidential, commercially sensitive, and trade secret information. Defendant did not have a business need to access or delete the numerous files that she accessed and deleted after the termination of her employment.

61. By running the bulk deletion operation on Single Grain's computer network, Defendant caused damage as that term is defined in 18 U.S.C. § 1030(e)(8).

By deleting the files from Single Grain's computer networks, Defendant caused damage as that term is defined in 18 U.S.C. § 1030(e)(8).

62. Defendant's actions were intentional, malicious, and for the sole purpose of damaging Single Grain and its business.

63. Moreover, Defendant acted with the intent to defraud by intentionally attempting to conceal her identity.

64. Because Defendant intentionally and without or in excess of her authorization accessed Single Grain's computer network and systems after the termination of her employment, thereby obtaining and/or destroying Single Grain proprietary documents and information, she has violated 18 U.S.C. § 1030(a)(2)(C).

65. Because Defendant, knowingly and with the intent to defraud, intentionally and without or in excess of her authorization accessed Single Grain's computer network and systems after the termination of her employment, thereby obtaining and/or destroying Single Grain proprietary documents and information, she has violated 18 U.S.C. § 1030(a)(4).

66. The damage caused by the above actions of Defendant caused Single Grain to suffer loss in the aggregate of at least $5,000, including, consisting of both the value of the information that was deleted or destroyed and the reasonable cost of responding to, investigating, and remedying the harm caused by Defendant's actions.

67. The total amount of damages to Single Grain as a result of the violation of 18 U.S.C. § 1030 by Defendant is an amount to be determined at trial.

## COUNT II

## (Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502)

68. Single Grain realleges and incorporates the preceding paragraphs by reference.

69. By intentionally and without authorization accessing Single Grain's computer network and user accounts after the termination of her employment and

deleting documents, subscriber data, video files, customer information, marketing assets, and social media accounts, Defendant knowingly accessed a computer network without permission and deleted data in order to wrongfully control or obtain that data in violation of Section 502(c)(1) of the California Penal Code.

70. By intentionally and without authorization accessing Single Grain's computer network and user accounts after the termination of her employment and deleting documents, subscriber data, video files, customer information, marketing assets, and social media accounts, Defendant knowingly accessed a computer network without permission and deleted data in violation of Sections 502(c)(4) of the California Penal Code.

71. By intentionally and without authorization accessing Single Grain's computer network and user accounts after the termination of her employment, Defendant knowingly accessed a computer network without permission in violation of section 502(c)(7) of the California Penal Code.

72. Single Grain has suffered damage from Defendant's unauthorized access of its computer network and deletion of its files.

73. Under California Penal Code section 502(e), Single Grain is entitled to compensatory damages, attorney's fees, and injunctive or other equitable relief for Defendant's violations.

74. Defendant's conduct demonstrates that she acted willfully, fraudulently, and maliciously within the meaning of California Civil Code section 3294. Accordingly, Plaintiffs are entitled to an award of punitive damages.

**COUNT III**

**(Violation of Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836-39 *et seq.*)**

75. Single Grain realleges and incorporates the preceding paragraphs by reference.

76. As a digital marketing company, Single Grain's confidential and

proprietary business and customer information is central to its business. Single Grain derives substantial, independent economic value from its customer information and associated marketing assets not being generally known to the public or to Single Grain's competitors, who could obtain substantial economic value from the information.

77. Single Grain expended substantial financial and human resources to create its marketing assets and strategies and to develop its customer information, which cannot be easily acquired or replicated by others. Further, Single Grain has taken substantial efforts to maintain the secrecy of its confidential and proprietary business and customer information, including but not limited to restricting access to such information, designating such information as confidential, and including a confidentiality provision in its employee handbook, which is signed by each Single Grain employee. Accordingly, Single Grain's confidential and proprietary business and customer information constitute trade secrets pursuant to the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836-39 *et seq*.

78. Defendant, by her actions, unlawfully accessed, destroyed, and thereby misappropriated Single Grain's trade secrets without Single Grain's knowledge, consent, or authority.

79. Defendant's misappropriation and destruction of these trade secrets had destroyed the value of this information and diminished the competitive advantage that such information gave to Single Grain. In addition, Defendant's conduct will likely result in diminished service offerings by Single Grain, and has already resulted in the disruption of Single Grain's business operations.

80. As a direct and proximate result of Defendant's misappropriation of Single Grain's trade secrets, Single Grain has sustained and will continue to sustain substantial pecuniary losses and harm.

81. Moreover, Defendant attempted to conceal her actions, evidencing an intent to defraud Single Grain.

82. Defendant's conduct demonstrates that she misappropriated Single Grain's trade secrets willfully and maliciously within the meaning of 18 U.S.C. § 1836(a)(3)(C) – (D), so as to entitle Single Grain to two times the damages and an award of reasonable attorney's fees.

83. The total amount of damages to Single Grain as a result of Defendant's actions is an amount to be determined at trial.

**COUNT IV**

**(Trade Secret Misappropriation in Violation of Cal. Civ. Code § 3426 *et seq.*)**

84. Single Grain realleges and incorporates the preceding paragraphs by reference.

85. Single Grain's confidential and proprietary business and customer information derives substantial, independent economic value from not being generally known to the public or to Single Grain's competitors, who could obtain economic value from such information.

86. Single Grain has expended substantial financial and human resources to develop its confidential and proprietary business and customer information, which cannot be easily acquired, ascertained, or replicated by others.

87. Single Grain's confidential and proprietary business and customer information are the subject of reasonable efforts by Single Grain to maintain their secrecy, and they derive independent economic value from not being generally known. Accordingly, Single Grain's proprietary business and customer information constitute trade secrets under California Civil Code section 3426.1.

88. Defendant, by her actions, unlawfully accessed, destroyed, and thereby misappropriated Single Grain's trade secrets without Single Grain's knowledge, consent, or authority.

89. Defendant's misappropriation and destruction of these trade secrets had destroyed the value of this information and diminished the competitive advantage

that such information gave to Single Grain. In addition, Defendant's conduct will likely result in diminished service offerings by Single Grain, and has already resulted in the disruption of Single Grain's business operations.

90. As a direct and proximate result of Defendant's misappropriation of Single Grain's trade secrets, Single Grain has sustained and will continue to sustain substantial pecuniary losses and harm.

91. Moreover, Defendant attempted to conceal her actions, evidencing an intent to defraud Single Grain.

92. Single Grain is entitled to recover from Defendant the actual, compensatory, and consequential damages sustained by Single Grain as a result of Defendant's wrongful acts described in this Complaint or the value of Defendant's unjust enrichment in an amount to be determined at trial.

93. Defendant's acts of misappropriation were intentional, willful, and malicious. Under California Civil Code section 3426.3(c), Single Grain is entitled to an award of punitive damages.

94. Single Grain is further entitled to an award of attorney's fees against Defendant.

**COUNT V**

**(Defamation Per Se)**

**(On behalf of Single Grain and Eric Siu)**

95. Plaintiffs reallege and incorporate the preceding paragraphs by reference.

96. Defendant has harmed Single Grain by publishing written statements falsely claiming, among other things, that Single Grain will "lie to every employee" and that Single Grain's CEO "frequently engaged in unethical practices." Additionally, Defendant published a written statement falsely alleging that "waves of employees" have been fired by Single Grain "at the start of every quarter since 2021." These statements are specifically referenced in and set forth in Paragraphs

44-47.

97. The statements at issue are false and purport to be statements of fact, not statements of opinion.

98. Defendant's statements were published on a public website and were thus made known to persons other than Plaintiff. Moreover, the statements were defamatory in nature, as the persons to whom the statements were published reasonably understood that the statements were about Single Grain and also reasonably understood the statements to mean that Single Grain violated industry ethics, lied to its employees, and engaged in waves of layoffs.

99. Defendant failed to use reasonable care to determine the truth or falsity of the written statements and, further, made those statements with the intent to cause injury or with knowing and willful disregard for the probable harmful consequences of her conduct and deliberately failed to avoid those consequences.

100. Moreover, Defendant knew the statements were false at the time she published them.

101. Defendant published these statements with the intent to injure Single Grain and its business.

102. Defendant's statements were not privileged, as the statements were not published in the kind of circumstances in which absolute protection applies, or in which it was necessary or appropriate to make those communications subject to a qualified privilege.

103. Defendant's written statements have a tendency to injure Single Grain in its trade, profession, and business, thereby constituting defamation *per se*.

104. Defendant's written statements likewise have a tendency to injure Eric Siu in his trade, profession, and business, thereby constituting defamation *per se*.

105. Moreover, Defendant's written statements have a tendency to subject Single Grain to public hatred, ridicule, or contempt, which also constitutes defamation *per se*.

106. Indeed, Defendant's written statements about Eric Siu imply that he engaged in treachery against his associates and engaged in unethical, and potentially criminal behavior, both of which constitute defamation *per se*.

107. Plaintiffs' reputations have been irreparably damaged as the result of Defendants' defamatory statements.

108. Plaintiff are further entitled to actual damages, compensatory damages, and punitive damages for Defendant's malicious and intentional defamatory statements, as Plaintiffs have been damaged in an amount to be determined at trial.

109. Defendant's conduct was willful, wanton, and malicious such that punitive damages should be awarded.

**COUNT VI**

**(Conversion)**

110. Single Grain realleges and incorporates the preceding paragraphs by reference.

111. Single Grain was, and still is, entitled to the immediate and exclusive possession of its trade secrets and other proprietary information, and all physical embodiments thereof, as alleged above.

112. Defendant has wrongfully converted valuable property belonging to Single Grain, including Single Grain's trade secrets and other proprietary information, including but not limited to records containing confidential client information.

113. Defendant's conduct was both willful and malicious and was taken with the intention of causing harm to Single Grain.

114. Single Grain did not consent to Defendant's conversion of Single Grain's trade secrets and other proprietary information.

115. As a result of Defendant's acts of conversion, Single Grain has been damaged in the sum or sums to be proven at trial, including all compensatory damages.

116. Further, Defendant's acts of conversion were done to deprive Single Grain of its property and legal rights or otherwise cause injury, and were despicable, malicious, oppressive, or fraudulent conduct that justifies an award of exemplary damages and punitive damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

117. WHEREFORE, Plaintiff Single Grain prays for judgment against Defendant as follows:

A. An award of compensatory damages in an amount to be determined at trial;

b. Special, general, and libel damages according to proof and as provided by law;

c. For exemplary damages and attorneys' fees under 18 U.S.C. § 2707(b), (c), California Penal Code section 502(e)(2), and California Civil Code sections 3426.3 and 3426.4 according to proof

a. Statutory double damages pursuant to California Civil Code § 3423.3(c);

b. Reasonable attorney's fees in an amount to be determined at trial;

c. Punitive and/or exemplary damages, as permitted by law, and in an amount to be determined at trial;

d. All costs of suit herein incurred;

e. Pre- and post-judgment interest as provided by law; and

f. Such other and further relief in law or equity to which Single Grain may be justly entitled as the Court may deem proper.

118. WHEREFORE, Plaintiff Eric Siu prays for judgment against Defendant as follows:

a. Special, general, and libel damages according to proof and as provided by law;

b. Reasonable attorney's fees in an amount to be determined at trial;

c. Punitive and/or exemplary damages, as permitted by law, and in an amount to be determined at trial;

d. All costs of suit herein incurred;

e. Pre- and post-judgment interest as provided by law; and

f. Such other and further relief in law or equity to which Single Grain may be justly entitled as the Court may deem proper.

**JURY TRIAL DEMAND**

119. Plaintiffs Single Grain and Eric Siu demand a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: September 29, 2023

THE LAW OFFICE OF ETHAN H. NELSON

/s/ *Ethan H. Nelson*
Ethan H. Nelson
Counsel for SINGLE GRAIN LLC, and ERIC SIU.